IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION

NO. 7:17-CV-162-FL

| | | |
|---|---|---|
| NATIONAL AUDUBON SOCIETY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| UNITED STATES ARMY CORPS OF ENGINEERS, COLONEL ROBERT J. CLARK in his official capacity as District Commander of the Wilmington District, and THE TOWN OF OCEAN ISLE BEACH, | ) ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the court on plaintiff's motion to complete and supplement the administrative record. (DE 26). The motion has been fully briefed, and the issues presented are ripe for ruling. For reasons noted, the motion is granted in part and denied in part.

## BACKGROUND

Plaintiff initiated this action August 14, 2017, seeking review of decision by defendant United States Army Corps of Engineers ("USACE") to allow defendant The Town of Ocean Isle ("Ocean Isle") to construct a type of rock wall known as a "terminal groin" in that part of Ocean Isle Beach immediately southwest of Shallotte Inlet ("terminal groin project"). Particularly, plaintiff seeks review of Record of Decision ("ROD") issued by USACE, which ROD granted to Ocean Isle a permit ("section 404 permit") allowing discharge of dredged or fill material into navigable waters, pursuant to section 404 of the Clean Water Act, 33 U.S.C. § 1344, et seq. ("CWA"). Plaintiff's

challenge embraces also adequacy of a draft environmental impact statement ("DEIS") and final environmental impact statement ("FEIS") prepared by defendant USACE in support of the ROD and section 404 permit, pursuant to the National Environmental Policy Act, 42 U.S.C. § 4331, et seq. ("NEPA"). Plaintiff amended its complaint as of right August 28, 2017, to join Ocean Isle as a defendant, in addition to other amendments throughout.

Plaintiff is a membership organization that works to conserve and restore habitat for wildlife, with a particular focus on birds and bird habitat. Defendant USACE is an agency within the United States Department of Defense charged with regulating construction in the waters of the United States, pursuant to the CWA, and defendant Colonel Robert J. Clark ("Clark," collectively "federal defendants") is district commander at USACE's Wilmington district office. Defendant Ocean Isle is an incorporated town located in Brunswick County, North Carolina. Ocean Isle is the permittee for the terminal groin project.

Plaintiff alleges that the federal defendants approved the terminal groin project without proper consideration of environmental consequences. In the first claim for relief, plaintiff alleges that USACE violated NEPA where it failed to evaluate fairly the comparative merits of studied alternatives. In the second claim for relief, plaintiff alleges USACE failed to include certain information in NEPA documents that was essential to a reasoned choice among alternatives, in violation of regulations promulgated by the Council on Environmental Quality ("CEQ regulations"). In the third claim for relief, plaintiff alleges that USACE failed to evaluate "secondary effects" of the studied alternatives, in violation of the CWA and CEQ regulations. In the fourth claim for relief, plaintiff alleges that USACE selected an alternative other than the Least Environmentally Damaging Practicable Alternative ("LEDPA"), in violation of the CWA. Finally, in the fifth claim for relief,

plaintiff alleges USACE failed to "independently evaluate" environmental information submitted by Coastal Planning and Engineering of North Carolina, Inc. ("CPE"), in violation CEQ regulations. In each claim for relief, plaintiff proceeds under the judicial review provisions of the Administrative Procedure Act ("APA"), 5 U.S.C. § 701, et seq.

Pursuant to this court's case management order, the federal defendants served on December 15, 2017, the proposed administrative record. After the federal defendants denied plaintiff's request to include in the administrative record additional documents, plaintiff filed the instant motion to complete and supplement the administrative record.

## STATEMENT OF THE FACTS

The facts pertinent to the instant motion may be summarized as follows. Ocean Isle Beach is a barrier island in southwest Brunswick County, North Carolina. (DE 7 ¶ 11; DE 20 ¶ 7; DE 21 ¶ 7). The island spans approximately 5.6 miles west-to-east from Tubbs Inlet to Shallotte Inlet and 0.6 miles north-to-south from the Intracoastal Waterway to the Atlantic Ocean. (Id.). Holden Beach, also a barrier island, lies to the east of Shallotte Inlet, which connects the Atlantic Ocean to the Intracoastal Waterway before joining Shallotte River. (Id.). Ocean Isle Beach and Holden Beach may provide important habitat for birds and other wildlife, including the *Charadrius melodus* and *Calidris canutus*, which are federally protected shorebirds. (Id. ¶¶ 15, 16, 18). The pertinent area surrounding the proposed location of the terminal groin is depicted below:



(Id. ¶ 13).

The Ocean Isle shoreline at Shallotte Inlet has always moved based on the alignment of the main channel in the inlet between Ocean Isle and Holden Beach. (Id. ¶ 12). As the main channel moves closer to Holden Beach, the eastern end of Ocean Isle erodes. (Id.). When the channel moves toward the middle of the inlet, both Ocean Isle and Holden Beach accrete. (Id.). Defendant Ocean Isle sought federal and state permits to allow construction of the terminal groin in an effort to control erosion and avert loss of beachfront land. (Id. ¶ 19; DE 30 at 26).

In 2011 or early 2012, defendant Ocean Isle entered into an agreement with CPE, where,

according to Ocean Isle, CPE agreed to perform a feasibility study to assist Ocean Isle in determining whether to pursue permits and construction of a terminal groin near Shallotte Inlet. (DE 7 ¶ 22; DE 20 ¶ 22). CPE prepared a modeling analysis and engineering report, dated May 2012, pursuant to its agreement with Ocean Isle. (Id. ¶ 23; DE 30-1).

On September 15, 2014, Ocean Isle applied to defendant USACE for a section 404 permit, in furtherance of its plan to construct a terminal groin near Shallotte Inlet. (DE 30-3). USACE hired CPE as third party contractor to prepare an environmental impact statement in furtherance of efforts to evaluate Ocean Isle's permit application. (DE 7 ¶ 24; DE 20 ¶ 24; DE 21 ¶ 24; DE 30 at 1).

As review of the instant terminal groin project was pending, USACE simultaneously conducted proceedings addressing broadly similar permit applications initiated by other coastal towns in eastern North Carolina. Specifically, in 2014 and 2015, USACE issued draft or supplemental environmental impact statements ("EIS") for all four projects. USACE finalized the EIS for Bald Head Island in 2014, followed by the DEIS for Holden Beach in 2015, and the FEIS for Ocean Isle and Figure Eight Island in 2016. (DE 38 at 16 (undisputed that USACE possessed the alleged documents)).

In January 2015, USACE issued the DEIS for the instant terminal groin project, as prepared by CPE, and accepted comments between January 23, 2015 and March 16, 2015. (DE 30 at 12). Following close of the DEIS comment period, USACE issued the FEIS on April 29, 2016. (DE 30).

Defendant USACE accepted comments regarding the FEIS in May 2016. On May 31, 2016, the Southern Environmental Law Center ("SELC") submitted comments, which, in relevant part, criticize USACE's use of the "Delft3D" model to analyze the environmental effects of the various studied alternatives on erosion and shoreline change. (DE 34 at 6–8). The SELC noted that while

5

USACE used the Delft3D model as part of the Figure Eight Island project, which also involved construction of a terminal groin, (see DE 28), USACE used different methods to analyze data generated by the Delft3D model for the terminal groin project. (DE 34 at 8).

Defendant USACE's responses to plaintiff's comments appear in an appendix to the ROD. (See DE 31 at 60–68). None of the responses address plaintiff's objections to the FEIS's use of the Delft3D model. (See id.). On February 27, 2017, defendant USACE issued the ROD, which grants to defendant Ocean Isle a section 404 permit allowing construction of the terminal groin project. (DE 31 at 2).

After the ROD issued, CPE and Ocean Isle exchanged e-mails on April 19, 2017, (DE 29-2), and May 17, 2017, (DE 29-3), wherein CPE and Ocean Isle discuss payment for CPE's services and possibility of entering a future contract related to Ocean Isle's ongoing management of the Shallotte Inlet.

## DISCUSSION

A.     Supplementation of the Administrative Record

In reviewing agency action pursuant to the Administrative Procedure Act ("APA"), "the court shall review the whole record." 5 U.S.C. § 706. "Judicial review of administrative action is generally confined to the administrative record." Fort Sumter Tours, Inc. v. Babbit, 66 F.3d 1324, 1335 (4th Cir. 1995). Further, "the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." Fayetteville Area Chamber of Commerce v. Volpe, 515 F.2d 1021, 1024 (4th Cir. 1975) (internal quotations omitted); see Bar MK Ranches v. Yuetter, 994 F.2d 735, 740 (10th Cir. 1993) ("The court assumes the agency properly designated the [a]dministrative [r]ecord absent clear evidence to the contrary.").

Although the APA does not expressly define what constitutes the "whole record . . . review is to be based on the full administrative record that was before the [decisionmaker] at the time he made his decision." Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 420 (1971).

Plaintiff moves to complete and supplement the administrative record by adding the FEIS for the Village of Bald Head Island Shoreline Protection Project ("Bald Head project"), (DE 27-2); the FEIS for the Figure Eight Shoreline Protection Project ("Figure Eight project"), (DE 28; DE 29); the DEIS for the Holden Beach East End Shore Protection Project ("Holden Beach project"), (DE 29-1); and emails exchanged between CPE and Ocean Isle on April 19, 2017, and May 17, 2017. (DE 29-2; DE 29-3).

Plaintiffs have not demonstrated that defendants considered any document not already included in the administrative record in reaching decision to approve the terminal groin project. First, e-mails exchanged after issuance of the ROD could not have been considered in formulating the ROD. Second, although plaintiff made reference to the Figure Eight project and its associated NEPA documentation in its March 31, 2016, comments on the FEIS, nothing indicates that defendant USACE responded to that aspect of plaintiff's comments or otherwise reviewed any NEPA documentation pertinent to the Figure Eight project in its consideration of the terminal groin project. (See DE 31 at 60–68). Finally, NEPA documentation pertinent to the Bald Head and Holden Beach projects was not presented for USACE's consideration by any comments, nor did USACE undertake independently to include its analysis pertaining to those other projects in NEPA documentation for the terminal groin project. (Id. at 51-97). Accordingly, where there is no evidence that defendant USACE reviewed any of the documents plaintiff seeks to add to the administrative record, those documents need not be included as record evidence. See Fort Sumter

7

Tours, 66 F.3d at 1335.

Plaintiff argues that NEPA documentation for the Bald Head, Figure Eight, and Holden Beach projects should be added as record evidence on grounds that those documents were prepared simultaneously with NEPA documentation for the terminal groin project and that CPE and USACE personnel were involved in all four projects. On this basis, plaintiff argues that such NEPA documents were "before" USACE in its consideration of the terminal groin project.

This argument fails, however, because it rests on an overly broad conception of what matters are "before" an agency for purposes of defining the administrative record. See Overton Park, 401 U.S. at 420 ("whole record . . . review is to be based on the full administrative record that was before the [decisionmaker] at the time he made his decision.") (emphasis added). That is, the administrative record does not consist of all documents in the decisionmaker's possession; rather, it consists of all documents the decisionmaker considered in reaching the decision under review. See In re United States, 138 S.Ct. 371, 372 (2017) (quoting Thompson v. United States Dept. of Labor, 885 F.2d 551, 555 (9th Cir. 1989) ("The whole administrative record, therefore, consists of all documents and materials directly or indirectly considered by agency decision-makers . . .") (emphasis added)). For this reason, NEPA documents pertinent to decisions outside the scope of the ROD under review may not be deemed "before" USACE in its preparation of the documents under review here. See id. Accordingly, plaintiff's argument on that ground fails.

Plaintiff further argues that, at minimum, NEPA documents pertinent to the Figure Eight project constitute record evidence because, through its March 31, 2016, comments, plaintiff presented those documents to USACE for review. This argument fails because it conflates a challenge premised upon an agency's alleged failure to respond to comments, which challenge is

8

not now before the court, with issues of the scope the administrative record. That is, as held above, the key inquiry in determining the scope of the administrative record is what documents the agency considered in reaching the decision under review. See In re United States, 138 S.Ct. at 372; Thompson, 885 F.2d at 555. Here, where they make no mention of the Figure Eight project, USACE's responses to plaintiff's comments support no inference that USACE considered the FEIS pertaining to the Figure Eight project in formulating responses to plaintiff's comments or otherwise in preparing the ROD under review. Accordingly, those documents are not part of the administrative record. See id.

B.  Extra-Record Evidence

The court now turns its address to plaintiff's argument that this court may consider certain documents as extra-record evidence. "While review of an agency decision is usually confined to [the administrative] record, there may be circumstances to justify expanding the record or permitting discovery." Nat. Audubon Soc. v. Dep't. of Navy, 422 F.3d 174, 188 n.4 (4th Cir. 2005). When "there [is] such a failure to explain administrative action as to frustrate effective review" the court may "obtain from the agency, either through affidavits or testimony, such additional explanation of the reasons for the agency decision as may prove necessary." Camp v. Pitts, 411 U.S. 138, 142–43 (1973). However, where the agency proffers a contemporaneous explanation of the agency decision, "there must be a strong showing of bad faith or improper behavior before [an inquiry into the mental processes of administrative decisionmakers] may be made." Overton Park, 401 U.S. at 420; see Prof'l. Massage Training Ctr., Inc. v. Accreditation All. of Career School and Colleges, 781 F.3d 161, 178 (4th Cir. 2015) (holding that agency staff's hostility toward applicant for educational accreditation was insufficient evidence of bias to justify "a more searching inquiry in the

9

motivations of administrative decisionmakers[.]"); United States v. Shaffer Equip. Co., 11 F.3d 450, 460 (4th Cir. 1993) (finding bad faith where agency investigator filed fraudulent documents and perjured himself in connection with statements of his credentials, rendering unreliable a portion of the administrative record of unknown scope.).

E-mails exchanged between CPE and Ocean Isle constitute proper extra-record evidence because such evidence is pertinent to whether USACE violated CEQ regulations in treating CPE as an independent third party contractor. In particular, where 40 C.F.R. § 1506.5(a) requires that any agency "independently evaluate the information submitted [by an applicant] and shall be responsible for its accuracy[,]" any failure to evaluate CPE's work product in light of CPE's close association with the permit applicant, namely, defendant Ocean Isle, constitutes the type of "bad faith or improper behavior" that justifies consideration of extra-record evidence. See Overton Park, 401 U.S. at 420. Indeed, evidence that both Ocean Isle, as applicant, and USACE, as adjudicator, hired CPE to prepare environmental reports, combined with evidence that USACE regarded CPE as an independent third party, supports the requisite "strong showing," that USACE failed to discharge its duty to evaluate independently information submitted by a permit applicant. See 40 C.F.R. § 1506.5(a). Therefore, e-mails lodged on the docket at DE 29-2 and DE 29-3 may be submitted as extra-record evidence in connection with anticipated motions for summary judgment. See 40 C.F.R. § 1506.5(a); Overton Park, 401 U.S. at 420.

Defendant USACE argues that emails between CPE and Ocean Isle may not be considered as extra-record evidence because such e-mails fail to demonstrate that any government officials failed to discharge their duty to act with "conscience and intellectual discipline," Withrow v. Larkin, 421 U.S. 35, 55 (1975), and to adjudicate Ocean Isle's permit application fairly. See id. The court

10

agrees that the pertinent e-mails demonstrate no bad faith of that nature. However, as held, violation of CEQ regulation requiring that every agency "independently evaluate" environmental information submitted by an applicant, see 40 C.F.R. § 1506.5(a), is a type of "improper behavior." See Overton Park, 401 U.S. at 420. In this manner, plaintiff's evidence demonstrates the requisite type of bad faith to warrant consideration of the pertinent e-mails as extra-record evidence.

By contrast, plaintiff has not demonstrated that this court may review NEPA documents for the Bald Head, Figure Eight, and Holden Beach projects as extra-record evidence. While plaintiff suggests that consideration of those other projects may assist the court in assessing documents under review, plaintiff has not demonstrated that NEPA documents for the instant project are so deficient "as to frustrate effective review" Camp v. Pitts, 411 U.S. 138, 142–43 (1973). Moreover, plaintiff makes no suggestion that NEPA documents for those other projects presents any evidence pertinent to bad faith or improper behavior. See Overton Park, 401 U.S. at 420. Accordingly, such documents do not fall within any exception to the general rule that "review of an agency decision is usually confined to [the administrative] record[.]" Nat. Audubon Soc. v. Dep't. of Navy, 422 F.3d 174, 188 n.4 (4th Cir. 2005).

Plaintiff argues that consideration of NEPA documents for other projects is necessary to assess defendant USACE's assertion, made in response to SELC's May 31, 2016, comments on the FEIS, that "the methods used to interpret the results obtained from the Delft3D model are accepted practice within the numerical modeling profession." (See DE 31 at 85). However, this argument fails where plaintiff has not demonstrated that the court must consider extra-record evidence to determine whether USACE's assertion that certain analytical methods constitute "accepted practice" is support by substantial evidence in the record, see 5 U.S.C. § 706(2)(E), or is otherwise arbitrary.

11

See 5 U.S.C. § 706(2)(A).

In sum, plaintiff's request to include e-mails lodged at DE 29-2 and DE 29-3 as extra-record evidence is allowed. However, where plaintiff has not demonstrated that any NEPA documents pertinent to other projects constitute part of the administrative record or that the court may consider such documents as extra-record evidence, plaintiff's motion otherwise is denied.

## CONCLUSION

For reasons noted, plaintiffs' motion to complete and supplement the administrative record, (DE 26), is granted in part and denied in part. Plaintiff's request to include e-mails lodged at DE 29-2 and DE 29-3 as extra-record evidence is ALLOWED. Otherwise, the motion is DENIED.

SO ORDERED, this the 30th day of September, 2018.

_____
LOUISE W. FLANAGAN
United States District Judge